### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF MISSISSIPPI
### OXFORD DIVISION

**BRENDA GROSS**                                                                **PLAINTIFF**

**v.**                                                          **No. 3:23-cv-00038-MPM-JMV**

**CARLISLE CONSTRUCTION MATERIALS, LLC**                        **DEFENDANT**

### ORDER

This matter is before the Court on Defendant Carlisle Construction Materials, LLC ("Carlisle") Motion for Summary Judgment [35]. Plaintiff, Brenda Gross ("Gross"), filed a response in opposition to the Motion [39], and Defendant filed a Reply [41], the Court, having reviewed the record and carefully considered the applicable law, is now prepared to rule.

### BACKGROUND

In her complaint, Ms. Gross alleges her termination violated the prohibition against discrimination pursuant to the Americans with Disabilities Act of 1990, (ADA), as amended, 42 U.S.C. § 12101 *et seq*. Ms. Gross worked for Carlisle for approximately eighteen years as a production line worker. For most of her life, Ms. Gross has suffered from diabetes, which caused her to have several toe amputations that limited her ability to function. Carlisle, a diversified manufacturer and supplier of premium building products for commercial and residential construction markets, hired Ms. Gross December 6, 2004, as a production operator in its General Production department at its plant in Senatobia, Mississippi. As an employee, Ms. Gross initially performed forklift operations where she took products to and from the line to be packaged or to remove scrap from the production line to be taken outside. While employed with Carlisle over this period, Ms. Gross also worked in shipping and receiving and as of the time of her termination, her job title was packaging operator. In her role as packaging operator, which she began in 2007 or

1

2008, her job duties included inspecting and wrapping rolls to be shipped to customers and required her to lift up to thirty pounds to change out roll wrappers.

Ms. Gross testified that during her time as a packaging operator, her job duties did not allow her to sit and instead required standing, bending, and lifting. At this time, Ms. Gross reported to Tracy Thornton, who reported to John Mayer, her supervisor in packaging. Ms. Gross alleges that she performed in these positions without complaint and was considered an "excellent employee." [1] at 2. While employed with Carlisle, Ms. Gross developed diabetic ulcers on her right foot that required the amputation of her toes, which resulted in an interference with her ability to walk and stand. Ms. Gross was placed on short-term disability in November of 2021 and was approved for long-term disability on April 5, 2022.

However, on April 6, 2022, the human resources manager, Adrienne Hill, informed Ms. Gross that she was terminated because she could not do the job. In response, Ms. Gross alleges that she informed the human resources manager of her ability to perform alternative positions while sitting. After her termination, Ms. Gross became aware that Carlisle hired others for jobs that could be done sitting down that she could have done.

Ms. Gross thereafter filed an Equal Employment Opportunity Commission (EEOC) charge and received a Notice of Right to Sue letter dated December 15, 2022. Because of the alleged actions by Carlisle, Ms. Gross asserts she has suffered lost income, mental anxiety and stress and requests reinstatement by Carlisle and monetary and punitive damages against Carlisle.

## STANDARD OF REVIEW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to material fact exists "if the evidence is such that a reasonable jury could

return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 258 (1986). At the summary judgment stage, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000). If a moving party shows that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law, the nonmoving party "must come forward with specific facts showing a genuine factual issue for trial." *Harris ex rel. Harris v. Pontotoc Cnty. Sch. Dist.*, 635 F.3d 685, 690 (5th Cir. 2011). "[A] party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)). "If the nonmoving party fails to meet this burden, the motion for summary judgment must be granted." *Little*, 37 F.3d at 1076.

## ANALYSIS

Ms. Gross claims that Carlisle terminated her because of her alleged disability and that Carlisle failed to provide a reasonable accommodation for her disability despite her request to be moved to several other positions that would allow her to sit while working. [1]. Ms. Gross further asserts that Carlisle was aware of her diabetes. In addition, Ms. Gross argues that she had several surgeries on her feet and on her back related to her diabetes in 2020, but she still went back to work. That is, until the most recent surgery on her feet and the amputation of her toes after which her doctor ordered she stay off of her feet. In addition, Ms. Gross claims that the reasons Carlisle gave for her termination were based on her disability and its failure to accommodate her with a seated position.

In response, Carlisle argues that it terminated Ms. Gross's employment because she could

not return to work and could no longer perform the essential function of her position, which required standing for prolonged periods. [35];[36]. Carlisle further asserts that it regularly accommodated Ms. Gross's medical leaves and various attendance needs during her eighteen years of employment, and that in each of the prior instances, Ms. Gross was able to return to her production operator position without issue. However, in April of 2022, following an eighth-month absence, Ms. Gross's condition worsened, and she was unable to return to work and perform weight-bearing activities such as standing or walking. Ms. Gross then transitioned to long-term disability upon which Carlisle terminated her employment. Carlisle further contends that the position of production operator is not a sit-down position; rather, "one that necessitates continuous physical engagement to ensure the safe, smooth operation of production processes. Standing for extended durations, stepping up an off platforms, walking, bending, and lifting are not merely preferences but essential functions woven into the fabric of the role itself." [36] at 1. For this reason, Carlisle asserts that it was not able to accommodate Ms. Gross's request to sit. In addition, Carlisle contends that it did not have any other vacant positions at that time.

As a result, Carlisle argues that Ms. Gross cannot establish she was a qualified individual under the ADA at the time of her termination nor upon transitioning to long-term disability as she was unable to perform the essential functions of her job, with or without reasonable accommodation, i.e., the ability to perform weight bearing activities. Carlisle further argues that the discriminatory discharge claim also fails as Ms. Gross has no evidence that it based any employment decision on her alleged disability or that the reason it provided for her termination was pretextual.

The ADA prohibits discrimination based on a disability. *Cannon v. Jacobs Field Servs. N. Am., Inc.*, 813 F.3d 586, 590 (5th Cir. 2016) (citing *Griffin v. United Parcel Serv., Inc.*, 661 F.3d

4

216, 221-22 (5th Cir. 2011)). A plaintiff using circumstantial evidence in the employment discrimination context must satisfy the *McDonnell Douglas* burden shifting framework. *See id.* (citation omitted). To make such a showing on a claim of disability discrimination under the ADA, Ms. Gross must show: (1) she has a disability; (2) she is qualified for the job; and (3) the covered entity made its adverse employment decision because of her disability. *Id.*; *Neely v. PSEG Tex., Ltd.*, 735 F.3d 242, 245 (5th Cir. 2013). Upon making such a showing, there is a presumption of discrimination and Carlisle must "articulate a legitimate non-discriminatory reason for the adverse employment action." *Cannon*, 813 F.3d at 590 (quoting *EEOC v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 615 (5th Cir. 2009)). Ms. Gross then has the burden to provide evidence from which a jury could conclude that Carlisle's articulated reason is pretextual. *See id.*

To prevail on a failure to accommodate claim, a party must prove: "(1) the plaintiff is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered employer; and (3) the employer failed to make reasonable accommodations for such known limitations." *See Neely*, 735 F.3d at 247 (internal quotation marks and alterations omitted).

An individual suffers from a "disability" under the ADA if the individual has "a physical . . . impairment that substantially limits one or more major life activities." *See Cannon*, 813 F.3d at 590 (citing 42 U.S.C. § 12102(1)). The ADAAA broadened the definition of "disability." *See Neely*, 735 F.3d at 245. A "major life activity" as contemplated by the ADA includes "performing manual tasks . . . walking, standing, lifting . . . and working." *Mueck v. La Grange Acquisitions, L.P.*, 75 F.4th 469, 478-80 (5th Cir. 2023) (citing 42 U.S.C. § 12102(2)(A)).

For either of Ms. Gross's claims to survive summary judgment, the evidence must establish at least a genuine dispute as to whether Ms. Gross was a "qualified individual" at the time of the

5

alleged unlawful discrimination. *See Moss v. Harris Cnty. Constable Precinct One*, 851 F.3d 413, 417 (5th Cir. 2017); *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 695 (5th Cir. 2014); *see also Reeves v. Dollar Gen. Corp.*, No. 98-60602, 1999 WL 274587, at *2 n.2 (5th Cir. Apr. 23, 1999) ("In assessing whether the plaintiff is a qualified individual, we focus on whether he or she was qualified at the time of his or her termination."). An individual is qualified for her job under the ADA if, "with or without reasonable accommodation," the individual "can perform the essential functions of the employment position that such individual holds or desires." *See* 42 U.S.C. § 12111(8).

It is undisputed that Ms. Gross's diabetic ulcers to her right foot that resulted in her toes being amputated interfered with her everyday life activities that included her ability to walk and stand. This constitutes a disability within the meaning of the ADA. *See, e.g.*, *Griffin*, 661 F.3d at 222-23. Even if Ms. Gross's ability to work prior to her amputation raises an inference, however slight, that she is a qualified individual, any such inference is eclipsed by Ms. Gross's testimony that she could not perform any aspects of the job as production operator or other job that required weight-bearing activity such as standing or walking. It is undisputed that these are essential functions of the position of production operator.

Here, the record reflects that Ms. Gross testified that at the time she was terminated, she was unable to perform her regular job duties as a production operator. [35-4] at 81. Carlisle's Human Resources Manager Adrienne Hill sent Ms. Gross a letter dated April 5, 2022, informing her that her employment had been terminated effective April 5, 2022. [35-3] at 2. This letter further alerted her that the long-term disability coverage would continue as long as she remained disabled. Ms. Gross testified that she brought her claim of discrimination because she was always at work unless out on medical leave, vacation, or personal days, and even after her surgery on her feet and

back, she returned to work and would supply supporting documentation from doctors that she was clear to return and perform her job. [35-4] at 28, 41. These instances, however, of the approximately ten leaves she took, were under short-term disability. Ms. Gross's most recent and last leave post-surgery in 2022 would have been on long-term disability. [35-4] at 39-40. Ms. Gross testified that the only open jobs with Carlisle at the time she wanted to be moved out of production were the ones for the position she was already in related to production. [35-4] at 52-54. Ms. Gross contends that she approached her supervisor, John Mayer, about an opening for receiving clerk position that would allow her to sit at a desk and work, but that job was never posted by Carlisle. [35-4] at 57-58. The clerk position was filled by another employee without a disability from production about a month after Ms. Gross learned of the opening. Ms. Gross also testified that she requested to work as the sole line-watcher as a full-time position to Mr. Mayer, which was not an actual position at the time but one she came up with, which would allow her to sit. Ms. Gross stated that she was qualified for this position. [35-4] at 71-72. Mr. Mayer told Ms. Gross that he did not think they could make it a one-person, full-time position because each person on the line had to do perform this function. [35-4] at 73.

Mr. Mayer, the production lead at Carlisle's plant in Senatobia, testified that he was the shift supervisor when Ms. Gross was packaging operator and that there were no positions in operations where an employee could consistently sit down. [35-5] at 13-14. Mr. Mayer testified that Ms. Gross would request help on specific days when her foot was hurting to sit and did not ask him to be moved to another position. At that time, Ms. Gross would have reported to the lead operator, who would then report to Mr. Mayer. While Ms. Gross was on Mr. Mayer's team, he interacted with her on a daily basis and described her as a good employee and testified that they had a good relationship and never had any issues with her performance. Mr. Mayer recalled Ms.

7

Gross taking leave for medical issues and filling her position while she was out and would accommodate her to the best of his ability when she was on the production line if she needed to sit because her foot was hurting. And if someone was available, Mr. Mayer would add a person to that area of the production line to lighten the workload for Ms. Gross.

Mr. Mayer described the position Ms. Gross had at that time as requiring operating machinery by stepping up onto a platform and stepping off so that it was not a position that could function with someone sitting. [35-4] at12-13, 16-17. In addition, this position would necessitate the packager, such as Ms. Gross, packaging the roll that was created from the continuous automated system once every three to four minutes where the production employees rotate every ten minutes on the line and requires inspection of the sheet roll and taking it off and putting it in a box once it reaches a certain size. When Ms. Gross was on medical leave or full disability or terminated, Mr. Mayer testified he believed he was out for FMLA for the birth of his daughter and was not the supervisor of that shift at that point. [35-4] at 15.

According to Kellie McGowan, the Business Unit Human Resources Manager for Carlisle, it is committed to its equal employment opportunity policies and its policies on providing reasonable accommodations to qualified employees with disabilities. [35-1]. Ms. McGowan also declared that it accommodated medical leave and the attendance needs of its employees, including Ms. Gross while she was employed with Carlisle as a production operator. Ms. McGowan described the production operator position as operating machinery and equipment used for the manufacture of high-quality products by monitoring, recording, and adjusting machines as needed for the customer. Ms. McGowan declared that this role is "inherently physical" and "70% standing and lifting, 15% Squatting, bending, reaching above shoulders, twisting and kneeling" and "frequent lifting of up to 10 pounds and occasionally pushing and pulling of up to 70 pounds."

8

[35-1] at 3; [35-2]. Carlisle also provided records that it regularly accommodated Ms. Gross with medical leave beginning in September of 2021 and that she was able to return to work as production operator in each instance prior to her termination on April 5, 2022.

Ms. McGowan stated that Carlisle terminated Ms. Gross after being informed by its benefits administrator that Ms. Gross was transitioning from short-term to long-term disability. Ms. McGowan declared that Carlisle's policy is to end an employee's employment when that employee transitions to long-term disability because the employee is unable to return to work. In addition, Ms. McGowan stated that Carlisle's records indicated that in April of 2022 when Ms. Gross was terminated, it had no vacant positions at its plant in Senatobia, Mississippi.

Additional testimony was provided of Sharon Thomas, who has been an employee of Carlisle's Senatobia plant as a winder operator for seventeen years. Ms. Thomas worked with Ms. Gross, although Ms. Gross worked in a different role. [35-6]. Ms. Thomas testified about being aware of Ms. Gross's foot issues and that it affected Ms. Gross's job, but she was not aware of Ms. Gross discussing this matter with anyone at Carlisle. According to Ms. Thomas, the line watcher position or quality control job that Ms. Gross requested is not a one-person job; but rather, is done every ten minutes by different employees.

Upon review, Ms. Gross has not shown that she was qualified for the job of production operator at the time of her termination, nor that Carlisle terminated her because of her disability. Further, Ms. Gross cannot show that Carlisle's stated reason for the termination of her employment—her transition to long-term disability—was pretextual to support the discriminatory discharge claim. As for the failure to accommodate claim, Ms. Gross cannot establish that she is a qualified individual with a disability because at the time of her termination, she was unable to perform an essential function of the position of production operator. In addition, Ms. Gross cannot

show that Carlisle failed to make reasonable accommodations.

Thus, after assessing the evidence, the Court concludes that no genuine issues of material fact exist regarding Ms. Gross's claims. In light of the foregoing, Defendant's Motion for Summary Judgment is due to be granted.

## CONCLUSION

For these reasons, Defendant Carlisle Construction Materials, LLC is entitled to the requested relief. Accordingly, Defendant's Motion for Summary Judgment [35] is **GRANTED**, and Plaintiff Brenda Gross's claims are **DISMISSED**. A separate judgment will be entered pursuant to Rule 58 of the Federal Rules of Civil Procedure.

**SO ORDERED** this the 16th day of July, 2024.

/s/ Michael P. Mills
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF MISSISSIPPI**